UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS JOSE BARBOZA VALENILLA, also known as MARCOS JOSE BARBOSA VALLENILLA, also known as MARCOS JOSE BARBOZA-VALENILLA (A# 078-409-321),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br>Respondents. | No. 1:26-cv-05241 DAD SCR<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## FACTUAL AND PROCEDURAL HISTORY

### I. Factual Background

Petitioner, a citizen and native of Venezuela, was first ordered removed to Venezuela on March 5, 2002. ECF No. 12-1 at 3, n.2. The impetus for removal appears to be his October 2000 conviction for making a false statement regarding a firearms acquisition under 18 U.S.C. § 922(a)(6) for which he was sentenced to 27 to 33 months in prison. ECF No. 12-2.

On August 19, 2019, Petitioner, along with his wife and children, applied for admission into the United States at the border near Eagle Pass, Texas. ECF No. 1 at 10-11. On October 21, 2020, an immigration judge ("IJ") granted Petitioner's application for deferral of removal under the Convention Against Torture ("CAT") but denied all other requests for relief.[1] ECF No. 12-1; ECF No. 1 at 10. The IJ did not order Petitioner removed due to the preexisting removal order. ECF No. 12-1 at 8. Petitioner appealed the ruling to the Board of Immigration Appeals ("BIA"). Id. On October 27, 2020, the Department of Homeland Security ("DHS") released Petitioner on an Order of Supervision ("OSUP"). ECF No. 12-4.

DHS revoked Petitioner's OSUP on November 24, 2025. ECF No. 12-3. On May 16, 2026, the BIA dismissed Petitioner's appeal. ECF No. 12-1. The record reflects that since the BIA's ruling, DHS has served no less than eight notices of removal on Petitioner informing him that ICE intends to remove him to Mexico. ECF No. 12-7. Petitioner has remained in ICE custody since November 2025 and is currently detained at the California City Immigration Processing Center within this judicial district. ECF No. 1 at 1.

## II. Procedural History

Petitioner initiated this action on July 8, 2026. ECF No. 1. Petitioner alleges that his continued, indefinite detention under 8 U.S.C. § 1231(a)(6) violates the Due Process Clause of the Fifth Amendment and the Supreme Court's ruling in Zadvydas v Davis, 533 U.S. 678 (2001). Id. at 6, 15-16. Petitioner also challenges the revocation of his OSUP "following years of successful supervision" as arbitrary and excessive in violation of the due process. Id. at 6 (Count Two); see also id. at 14-16. He requests release on prior conditions of supervision. Id. at 18.

At the time Petitioner filed this petition, he had another immigration habeas action pending in the Middle District of Florida, Barbosa Vallenilla v. Warden, Baker County Detention Center, No. 3:26-cv-0144 JEP PDB (M.D. Fla.). ECF No. 1 at 11. On July 16, 2026, the undersigned issued findings and recommendations that this action be dismissed pursuant to the

[1] The immigration court records submitted by Respondent are heavily redacted and obscure the scope of the IJ's grant of relief. See ECF No. 12-1 at 3-4. However, it appears from the record—and the parties do not appear to dispute—that the IJ granted relief pursuant to the CAT and the BIA did not disturb that ruling.

first-to-file rule. ECF No. 4. District Judge Drozd adopted the findings and recommendations in part and stayed the case pending resolution of the action before the Middle District of Florida. ECF No. 6. After Petitioner voluntarily dismissed the first-filed action, Judge Drozd lifted the stay. ECF No. 9. The undersigned then ordered Respondent to answer the petition. ECF No. 10.

Respondent opposes the petition and confirms DHS is attempting to remove Petitioner to Mexico pursuant to the third-country removal provisions at 8 U.S.C. § 1231(b). ECF No. 12. Respondent argues that "Petitioner can be removed to Mexico if he cooperates in his removal," and that his "willful refuse not to cooperate in effectuating his removal order should not bode in his favor by securing his release." Id. at 2.

## LEGAL STANDARD

### I. Immigration Detention Framework After Final Order of Removal

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). The parties do not dispute that Petitioner has been subject to § 1231(a)(6) at all times relevant to this petition.[2]

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692. To avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States,

---

[2] Petitioner maintains the 90-day removal period commenced on May 19, 2026, the date the "BIA's dismissal rendered the removal order final," and that his detention shifted to § 1231(a)(6) on or around August 17, 2026. ECF No. 1 at 11. This is inaccurate. The BIA's dismissal order addressed only Petitioner's applications for withholding of removal, not his March 2002 removal order, which has long been final. The record evidence, including Petitioner's October 2020 Order of Supervision pursuant to 8 U.S.C. § 1231(a)(3), ECF No. 12-4, shows that he was subject to § 1231(a) well before the BIA's ruling.

including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

"Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal." Ruiz-Acosta v. Cent. Valley Annex, No. 1:26-CV-04371-DAD-JDP (HC), 2026 WL 1846727, at *2 (E.D. Cal. June 26, 2026) (quoting Martinez v. Bondi, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025)). Where, as here, Petitioner was issued a final order of removal, detained, and subsequently released and then re-detained, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. June 20, 2025); Vu v. Noem, No. 1:25-cv-01366-KES SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

The applicable regulation is 8 C.F.R. § 241.13(i)(2), which allows DHS to "revoke [a noncitizen's] release . . . and return the [noncitizen] to custody if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Courts have found this regulation to be

enforceable in habeas actions. See Nguyen, 788 F. Supp. 3d at 152 ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted); Nguyen v. Charles, No. 1:25-CV-01592-TLN-CSK, 2025 WL 3492117, at *2 (E.D. Cal. Dec. 4, 2025) (observing that 8 C.F.R. § 241.13(i) "protect[s] important due process rights owed to non-citizens.").

## ANALYSIS

Because DHS released Petitioner on OSUP in October 2020 and revoked that release in November 2025, the undersigned finds that the burden shifting framework of Zadvydas does not apply to this case. See Vu, 2025 WL 3114341, at *5. Instead, Respondent bears the burden of demonstrating a changed circumstance indicating a significant likelihood of removal. See 8 C.F.R. § 241.13(i)(2).

Respondent's opposition does not identify the impetus for the November 2025 revocation of Petitioner's OSUP. The field on the "Notice of Revocation of Release" form to explain the basis for revocation is blank. ECF No. 12-3 at 1. The undersigned finds no other evidence in the record of changed circumstances warranting revocation of Petitioner's OSUP at that time. Petitioner's receipt of CAT relief forecloses any argument that removal to Venezuela was reasonably foreseeable at that time. See Saadhom v. Bondi, 829 F. Supp. 3d 907, 915 (W.D. Wash. 2026) ("[A] a grant of withholding of removal under the [CAT] to a noncitizen 'is a powerful indication of the improbability of his foreseeable removal, by any objective measure.'" (quoting Nadarajah v. Gonzales, 443 F.3d 1069, 1081 (9th Cir. 2006))).

Respondent apparently hopes to remove Petitioner to Mexico pursuant to 8 U.S.C. § 1231(b), but the record shows those efforts are relatively recent. The earliest Notice of Removal to Mexico in the record is dated May 26, 2026, six months after Petitioner's re-detention. ECF No. 12-7 at 22; see also ECF No. 12 at 2 (Respondent acknowledges ICE has been attempting to remove Petitioner to Mexico "since at least August 2026[.]"). The commencement of efforts to remove Petitioner to a third-country six months after re-detention cannot retroactively justify an unlawful revocation. See Nguyen, 2025 WL 3492117, at *3 ("The 'on account of' language [in §

241.13(i)(2)] means that the 'changed circumstances' are a prerequisite to revocation."). Accordingly, because the revocation of Petitioner's release violated 8 C.F.R. § 241.13(i)(2), the undersigned recommends that the petition be granted.

Respondent argues release is an inappropriate remedy because "Petitioner can be removed to Mexico if he cooperates in his removal." ECF No. 12 at 2. But the mere existence of a Notice of Removal to Mexico, absent other information regarding Mexico's willingness to accept Petitioner, is insufficient to satisfy Respondent's burden of demonstrating a significantly likelihood of removal in the reasonably foreseeable future. See Rivero-Tapanes v. Rokosky, No. CV-26-01542-PHX-RM (CDB), 2026 WL 1469826, at *3 (D. Ariz. May 26, 2026) (finding Notice of Removal to Mexico did not show a significant likelihood of removal where "there is no evidence in the record that Mexico has, in fact, agreed to accept Petitioner"). To the extent Respondent suggests Petitioner's refusal to cooperate with his removal to Mexico warrants indefinite detention, the undersigned joins the numerous other judges who have rejected this argument. See Obando Vargas v. Blanche, et al., No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous[.]"); Boza-Rosales v. Blanche, 833 F. Supp. 3d 1174, 1178 (W.D. Wash. 2026) ("Respondents may not rely on petitioner's refusal to go along with their improper efforts to remove him to a third country as a basis for denying him habeas relief.").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED on Count Two (arbitrary OSUP revocation).[3]

2. Respondent be ordered to immediately release Petitioner Marcos Jose Barboza Valenilla (A# 078-409-321), also known as Marcos Jose Barbosa Vallenilla or Marcos Jose

---

[3] In the interests of judicial economy, the petition's remaining claim is not addressed herein.

Barboza-Valenilla, under conditions of supervision dictated by applicable statutes and regulations.

3. The Clerk of the Court be directed to serve the California City Immigration Processing Center with a copy of any final order granting release.

4. Respondent be enjoined from re-detaining Petitioner unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i) and any other applicable statutes and regulations.

5. Judgment be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 16, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE